**CONFEDERATED TRIBES OF THE CHEHALIS INDIAN RESERVATION, et al., Plaintiffs,**

v.

**Manuel LUJAN, et al., Defendants.**

**No. C89–58R.**

United States District Court,
W.D. Washington,
at Seattle.

Jan. 8, 1990.

Jill A. Salmi, Seattle, Wash., Dennis J. Whittlesey, Alagia, Day, Marshall, Mintmire & Chauvin, Washington, D.C., for plaintiffs.

Susan L. Barnes, Seattle, Wash., Daniel G. Steele, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on defendants' motion to dismiss and the parties' cross-motions for summary judgment. Having reviewed the motions, together with all documents filed in support and in opposition, having heard oral argument, and being fully advised, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

The plaintiffs in this case are a group of Indian tribes and nine individual Indians [1]. Plaintiffs bring this action seeking specific declaratory and injunctive relief enjoining the Secretary of the Interior from dealing with the Quinault Indian Nation (or Tribe) as the sole governing body of the Quinault Indian Reservation, located on the Olympic Peninsula of Washington. Plaintiffs further seek a court order enjoining the Secretary to recognize as the Reservation's governing body a group constituted of the multiple Indian tribes for which, plaintiffs argue, the Reservation was created. This action is sought pursuant to 25 U.S.C. § 476, section 16 of the Indian Reorganiza-

tion Act. Finally, plaintiffs seek an injunction for the Secretary to halt activities involving the Quinault Tribal Highway Project on the Peninsula until such time as the project application is ratified by the newly recognized governing body.

The defendant, the United States government, has brought a motion to dismiss the action based on five separate grounds, including the government's sovereign immunity from suit, expiration of the statute of limitations, the political question doctrine, failure to exhaust administrative remedies, and failure to name an indispensable party.

The parties have also cross-moved for summary judgment as to the Quinault Indian Tribe's status as the recognized governing authority for the Quinault Reservation.

### A. History of the Reservation

The first governmental attempt at negotiations with the various Olympic Peninsula Indian groups occurred in 1855 at the Chehalis River Treaty Council. Governor Isaac Stevens convened the meeting of all coastal and interior tribes in the area. It was his intention to place all these tribes on a single reservation. Virtually all the tribes refused to accept such a plan and Governor Stevens dismissed the Treaty Council.

Although the negotiations failed to achieve their full purpose, the meetings did result in a treaty between the U.S. and the Quinaults and Quileutes. Aides of the Governor met with the two tribes and produced what is known as the Treaty of Olympia, which was signed by the Governor in 1856. Article VI of the Treaty provided that the President "may consolidate them (the Quinault and Quileute) with other friendly tribes and bands" on that reservation.

A 220,000 acre reservation was finally created by Executive Order of November 4, 1873. By this order, President Grant stat-

---

**1.** The plaintiffs include the Chehalis, Shoalwater Bay, Chinook and Cowlitz tribes. The Chehalis and Shoalwater Bay tribes are federally recognized, while the Chinook and Cowlitz tribes are unrecognized and have petitions for recognition pending with the Department of the Interior.

Plaintiffs also include nine individual Indian tribal members who hold allotments on the Quinault Reservation and who are enrolled members of four recognized tribes—Quileute, Makah, Hoh and Quinault.

ed that he intended "to provide for other Indians in that locality" by withdrawing lands from the public domain "for the use of the Quinaielt, Quillehute, Quit, and other tribes of fish-eating Indians on the Pacific coast."

The Quileute and Hoh Tribes refused to locate on the Quinault Reservation and were established on separate reservations created by Executive Order of February 19, 1989 (Quileute) and Executive Order of September 11, 1893 (Hoh). The government also established the Chehalis and Shoalwater Bay Reservations, and remnants of several groups not signatory to any treaty, including Chehalis, Chinook, Cowlitz, Clatsop and others, were consolidated on those reservations in Executive Orders of October 1, 1886 and September 22, 1886.

Pursuant to the Allotment Act of February 8, 1887 (24 Stat. 388), allotments were made on the Reservation by the turn of the century. However, the tribes which were affiliated on the Reservation by the Executive Order were having difficulty in obtaining allotments, particularly as land was scarce on the Chehalis and Shoalwater Bay Reservations. Congress sought to remedy this situation through the Allotment Act of March 4, 1911 (36 Stat. 1345).

The Allotment Act of 1911 directed the Secretary of the Interior to make allotments on the Quinault Reservation "to all members of the Hoh, Quileute, Ozette or other tribes of Indians in Washington who are affiliated with the Quinaielt and Quileute tribes in the treaty (of Olympia) … and who may elect to take allotments on the Quinaielt[2] Reservation rather than on the reservations set apart for those tribes."

By about 1916, the allotment process on the Reservation was halted because all the agricultural and grazing land had been allotted and the BIA Forestry staff concluded that timber land should not be allotted. The allotment process was resumed in the mid–1920s in the wake of the Supreme Court's decision in *United States v. Payne,* 264 U.S. 446, 44 S.Ct. 352, 68 L.Ed. 782 (1924).

The next series of allotments primarily were made to Quileutes, Hohs and Quits residing on the Reservation. Few allotments were being made to Chinook, Cowlitz, Makah or Chehalis Indians, so they were forced to litigate their entitlements in *Halbert v. United States,* 283 U.S. 753, 51 S.Ct. 615, 75 L.Ed. 1389 (1931). The Supreme Court held that the Hoh, Quits, Chehalis, Chinook and Cowlitz all were entitled to take allotments on the Quinault Reservation as a matter of law because of their "post-treaty affiliation" with the signatory tribes of the Treaty of Olympia. The Court held that personal residence on the Reservation was not necessary to obtain an allotment.

During the mid–1940's, litigation was initiated over a boundary dispute on surveyed Quinault Reservation land, resulting in a Court of Claims opinion recognizing that the Chinook, Quileute, Hoh, Quit, Chehalis, Cowlitz and Ozette tribes had certain rights equal to those of the Quinault Indians. *See, The Quinaielt Tribe of Indians v. U.S.,* 102 Ct.Cl. 822 (1945).

Further litigation over the boundary dispute and related damages resulted in a special and limited statute, the Act of July 24, 1947 (61 Stat. 416), which permitted the Quinault Tribe to litigate the claim on behalf of itself and the affiliated tribes. Legislative recognition of the Tribe as the primary party for litigation was limited to the scope of that legal action.

Litigation involving similar issues of treaty rights for multiple tribes. continued into this decade. In *Wahkiakum Band of Chinook Indians v. Bateman,* 655 F.2d 176 (1981), an entity of the Chinook Tribe litigated its claim to assert federally protected fishing rights on the Reservation. *Williams v. Clark,* 742 F.2d 549 (1984) was a significant decision involving the property rights of a Quileute tribe member. Citing the prior cases on the various rights of the post-treaty affiliated tribes, the Ninth

---

**2.** The English spelling of the Indian names "Quinault" and "Quileute" has varied over the dec-   ades in official documents.

Circuit affirmatively declared that the Quileute Tribe has treaty rights at the Quinault Reservation and that the Quinault Tribe does not have exclusive authority over the Reservation which supersedes the Reservation rights of the other tribal members for which it was established.

### B. Governing Authority on the Reservation

The government has officially recognized the Quinault Indian Tribe as the governing body of the Reservation for decades. The Tribe most recently amended its set of governing by-laws in 1975, providing that membership in the Quinault Indian Nation includes any person of ¼ Quinault, Queets, Quileute, Hoh, Chinook, Chehalis, or Cowlitz blood combined, who is not a member of any other federally recognized Indian Tribe. A person may also be adopted into the Nation by a majority vote of the General Council. All Quinault Indian Nation members may be part of the Reservation's governing General Council.

This suit was brought by plaintiffs to challenge the government's admitted continuing recognition of the Quinault Indian Nation as the sole governing authority for the Reservation.

## II. DISCUSSION

The court first addresses the government's Motion to Dismiss. The government raises five substantial challenges to the court's ability to hear this case. These challenges include (1) sovereign immunity; (2) expiration of the statute of limitations; (3) the political question doctrine; (4) failure to exhaust administrative remedies; and (5) failure to name an indispensable party. The court finds that plaintiffs have indeed failed to name an indispensable party in this suit, and therefore the government succeeds in its motion to have this case dismissed. The court need not address the other four arguments.

The government states that by failing to name the Quinault Indian Tribe as a defendant, plaintiffs have failed to join an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. Rule 19 governs the joinder of persons needed for just adjudication of a case.

The Ninth Circuit has recognized that "there is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a) ... The determination is heavily influenced by the facts and circumstances of each case." *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (1982). Generally courts apply a practical two-step inquiry in addressing the issue of indispensable parties.

> First, a court must determine whether an absent party should be joined as a "necessary party" under subsection (a). Second, if the court concludes that the nonparty is necessary and cannot be joined for practical or jurisdictional reasons, it must then determine under subsection (b) whether in equity and good conscience the action should be dismissed because the nonparty is "indispensable."

*Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1042 (9th Cir.1983), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983).

The court is persuaded that the Quinault Indian Tribe is a necessary party to this action. Plaintiffs are seeking a complete reorganization of the Reservation's governing body and the effective termination of the Tribe's currently recognized status as the exclusive governing authority of the Reservation. Further, success in this suit against the government would not afford complete relief for the plaintiffs because a judgment against the Department would not be binding on the Tribe.

The Tribe could, and conceivably would, continue to assert its sovereign power and management responsibilities over the Reservation. The Tribe's relationship to other parties, such as the State of Washington or Congress, would also not be legally affected by any outcome of this lawsuit. The court is concerned that the government could be subject to substantial risk of multiple or inconsistent legal obligations as a result of a disposition without the necessary party. *See, Northrop*, 705 F.2d at 1043. Therefore, the Tribe is most certainly a party whose interests are affected, and

in whose absence complete relief may not be afforded.

Plaintiffs concede that the Quinault Indian Tribe is immune from suit under the doctrine of sovereign immunity and cannot be joined in this action. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978); *Puyallup Tribe v. Washington Game Dept.,* 433 U.S. 165, 172–73, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977). The court must evaluate whether under Rule 19(b), the Quinault Indian Tribe is thus an indispensable party, resulting in dismissal of the suit for nonjoinder.

Under Rule 19(b), factors for the court to consider include: (1) whether and to what extent there would be prejudice to the absent party; (2) whether the court could shape relief to lessen or avoid that prejudice; (3) whether a judgment would provide adequate relief if the action is dismissed for nonjoinder; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed.

Contrary to plaintiffs' assertion that there would be no impairment of the Quinault Tribe's legal or treaty rights through court action, there clearly would be prejudice to the Quinault Indian Tribe if the court were to find in favor of the plaintiffs. The Tribe's existing authority over the Reservation would be substantially altered. Secondly, no relief can be shaped that would avoid prejudice to the Tribe in this litigation. Plaintiffs seek a complete substitution of the Quinault Tribe's sovereign authority. There appears to be no compromise position that would satisfy plaintiffs and not prejudice the Quinault Tribe.

Plaintiffs describe their procedural situation in this suit as a "Catch–22". While the court is sympathetic to plaintiffs' frustration at their inability to achieve jurisdiction over the party at the heart of the dispute, it cannot ignore the rule of law on joinder of parties.

## III. CONCLUSION

Because the court finds it necessary to dismiss the case for plaintiffs' failure to name an indispensable party, the court will not reach the merits in this case through the cross-motions for summary judgment.

THEREFORE, defendants' motion to dismiss is GRANTED. The parties' cross-motions for summary judgment are DENIED as moot.